UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

PASQUALE PARRELLO, *et al.*

Defendants.

No. 16-cr-522 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

On March 8, 2017, the government, pursuant to Federal Rule of Criminal Procedure 16(d)(1), provided the Court with an ex parte application under seal (the "Application") requesting a protective order precluding the dissemination of certain materials disclosed in a letter dated March 8 (the "Letter") attached as an exhibit to the application. On March 9, 2017, the Court entered the requested protective order (the "Protective Order") and the government distributed the Letter to the Defendants in this case. (Doc. No. 563.) On March 12, 2017, three days after the Court entered the Protective Order, the New York Post published a story allegedly disclosing the contents of the Letter and citing multiple sources for the allegedly leaked information. On March 16, 2017, the Court received the attached letter from third-party Jerry Capeci (the "Capeci Letter") seeking to intervene in order to assert the public's First Amendment right of access to the Letter and asking the Court to unseal the Letter and all documents submitted with the Letter.

Accordingly, IT IS HEREBY ORDERED that by March 24, 2017, the government shall respond to the Capeci Letter and docket its response on ECF. Specifically, the government shall address (1) whether third-party Jerry Capeci should be allowed to intervene in this case and (2) the need to seal the Letter and all documents submitted with the Letter. Mr. Capeci and any other

party who wishes to file a reply to the government's response shall do so by Wednesday, March 29, 2017.

SO ORDERED

Dated: March 16, 2017
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

# Gang Land News
## Real Stuff about Organized Crime

capeci@ganglandnews.com
Jerry Capeci

March 14, 2017

The Honorable Richard J. Sullivan
US District Court
40 Foley Square
New York, NY 10007

**<u>Re: US v. Parrello et al, 16CR522 (RJS)</u>**

Dear Judge Sullivan,

I respectfully submit this letter for the purpose of intervening in the above referenced case in order to assert the public's right of access to a letter dated March 8, 2017 that was filed by the government in this proceeding and turned over to the lawyers for 46 defendants who are awaiting trial on racketeering conspiracy charges. The Court ordered the letter at issue to be sealed on March 9, 2017.

Specifically, I petition the Court to treat this application as a claim asserted by an interested party requesting the release of the letter, as well as any and all documents that may have been submitted along with the letter for your consideration, to the public. I also ask that you treat this letter as a *pro se* motion and list it as such on the court docket sheet.

This petition is made pursuant to the tenets of the common law and the First Amendment of the Constitution, and all the relevant statutes and judicial precedents that ensure the public's right of access to all judicial documents in criminal prosecutions in the United States of America.[1] In this regard, several courts have recognized that a third-party motion to intervene is a procedurally proper device for the purpose of protecting the public right of access to documents filed in a criminal proceeding. *See, e.g., United States v. King,* 140 F.3d 76, 77 (2d Cir. 1998); *United States v. Haller,* 837 F.2d 84, 85 (2d Cir. 1988); *In re in re Herald Co.,* 734 F.2d 93, 96 (2d Cir. 1984); *In re Application of Herald Co.,* 734 F.2d 93, 96 (2d Cir. 1984).

---

[1] In addition to the common law right of access, courts have also found the First Amendment to the United States Constitution to presume a right of the public to inspect and copy judicial records and documents. *See Nixon v. Warner,* 435 U.S. 589, 597 (1978); Va. Dep't of State Police v. *Wash. Post,* 386 F.3d 567, 575 (4th Cir. 2004); *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 178, 180 (4th Cir. 1988). Notably, the First Amendment's guarantee of that right is much stronger than the guarantee provided by the common law. *Wash. Post,* 386 F.3d at 575; *see also Press-Enter. Co. v. Super. Ct. of Cal. for the County of Riverside,* 478 U.S. 1, 15 (1986); *Stone,* 855 F.2d at 180.

# Gang Land News
### Real Stuff about Organized Crime
capeci@ganglandnews.com
Jerry Capeci

Since the mid-1970s, I have covered federal court proceedings, as a staff reporter for both the New York Post and New York Daily News, as a freelance writer for many publications, and also as an author of several non-fiction books about crime. Since 1996, I have published a weekly online column about organized crime at www.ganglandnews.com. Since the Parrello indictment was unsealed in August of 2016, I have written and published numerous articles about the case on the Gang Land News website.

In relation to the above referenced case, the indictment, which accuses the defendants of having links to five Cosa Nostra families, is newsworthy. The FBI, NYPD, U.S. Attorney's Office and Westchester District Attorney's Office each issued statements about it in a news release that was distributed on the day the indictment was unsealed. Stories about the case have been reported by news organizations, large and small, across the globe. The prosecution remains a topic of public interest, and a subject matter related to my ongoing work as a journalist.[2]

Upon information and belief, the aforementioned March 8 letter discloses that the FBI is conducting an internal investigation into the conduct of two FBI Special Agents as well as a Supervising Special Agent regarding their supervision of a key cooperating witness, John Rubeo Jr., a mob associate whose identity has long been known and reported.

FBI informant Rubeo's name, his picture, his dealings with reputed mobsters, his work as a cooperating witness, and several crimes he has allegedly committed, have been mentioned in numerous articles that have appeared on my website, and on Fox 29 News in Philadelphia. Most recently, on March 13, 2017, the New York Post identified him as the cooperating witness in its newspaper. The Post first published the story on the paper's website, on Sunday, March 12, at about 10:18 PM.

The Post article also states that federal prosecutors alerted "defense lawyers that two FBI agents and a supervising agent in the case are being probed internally about their interactions with a key witness," and also for allegedly failing to "memorialize debriefings" of Rubeo. The story, by reporter Kaja Whitehouse, attributes the information to undisclosed sources. (Copy of the newspaper story attached. Online version at http://nypost.com/2017/03/12/mobsters-could-walk-free-after-feds-potentially-botch-case/)

---

[2] Notably, the motives of the press and public for seeking access to such records is not relevant or dispositive to whether access should be granted, because the party seeking closure bears the burden of demonstrating that the documents submitted to the court should be sealed. *DiRussa v. Dean Witter Reynolds*, Inc., 121 F.3d 818, 820 (2d Cir. 1997); *United States v. Amodeo*, 71 F.3d 1044 (The motive for seeking access is irrelevant when defining the weight accorded the presumption of access).

Whitehouse wrote that "prosecutors also warned that the government may have failed to preserve certain communications with Rubeo" and that "agents may have also leaked confidential case information to Gangland News, a well-read blog about organized crime."

In its March 9, 2017 order, the Court agreed with a government request to seal the letter, and forbade the release of the contents of the letter by the defendants or any members of the defense team. Specifically, the Court found "that the confidentiality and privacy interests of third parties would be adversely affected by the disclosure of the contents of the letter." (Docket number 563)

Despite the Court's concern for the privacy of third parties, the continued sealing of the Government's letter is improper at this time and a violation of the public's right to access judicial records under both the common law and the First Amendment.

First, the stated concerns the Court raised about the "privacy interests of third parties" that might be "adversely affected by the disclosure of the contents of the letter" are no longer a valid reason to keep the letter sealed since for all intents and purposes, the Post has revealed the specific details about the letter and the chief allegations relating to the third parties that would allegedly be impacted by such disclosure.

It is unclear whether or not the names of the three agents in question are mentioned in the letter, but the Post account, when coupled with articles I have written previously, establishes who they are. On August 11, my original report about the case named the two FBI agents who ran the investigation. And a follow-up article on August 25 identified their supervisor.

Second, the revelations contained in the letter are material to the public's understanding about an important ongoing judicial proceeding in a novel racketeering conspiracy case in which the government charged 46 defendants with being members of a previously unheard of organized crime enterprise known as the East Coast LCN Enterprise.

The public has the right to know as much as the defendants do about an FBI investigation concerning the integrity of three FBI agents and a cooperating witness who tape-recorded hundreds of conversations that were used to obtain the indictment of 46 defendants from five states following a five-year-long investigation.

It is difficult to fathom why FBI agents involved in a major racketeering case should have privacy rights, while the defendants who are presumed to be innocent and have their liberty at stake, have enjoyed no such entitlement. To the contrary, the government publicly exploited its evidence in a 10-page news release against the defendants. The release contained statements by


# Gang Land News
**Real Stuff about Organized Crime**

capeci@ganglandnews.com
Jerry Capeci

law enforcement officials about the inculpatory information and utilized the press to inform the public about its groundbreaking investigation in this matter.

Under such circumstances, there is no reason why the public's common law and First Amendment rights regarding a major criminal case should play second fiddle to the privacy concerns of FBI agents, a cooperating witness, or the undersigned publisher of Gang Land News, if he or his publication is indeed mentioned in the March 8, 2017 letter.

Third, the Government has not demonstrated an extraordinary or compelling interest that would trump the press and the public's First Amendment right to access this letter. *See Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510-11 (1984) ("The party seeking closure or sealing must show that such a restriction of the first amendment right of public access is necessitated by a compelling United States interest.")

It is well established that except for extraordinary reasons, namely those that involve national security or safety of witnesses or other individuals, the public and the press have a common law as well as a First Amendment right to all judicial documents, including letters and exhibits, in all criminal cases.[3]

The First Amendment guarantees the press and the public "a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." *Washington Post v. Robinson*, 935 F.2d 282, 287-88 (D.C. Cir. 1991); *See also In re New York Times Co.*, 828 F.2d, 110,114 (2d Cir. 1987) ("where the first amendment provides a right of access, continued, sealing of documents may be justified only with specific, on-the record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim").

*In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994), the Second Circuit explained that "[i]n most cases, a judge must carefully and skeptically review sealing requests to insure that

---

[3] These rights include documents related to the activities of government witnesses who have signed cooperation agreements with the federal government. These rights applied to documents regarding one of the most notorious cooperating witnesses in American history. *See USA v. Gotti*, et al., 90CR1051 (EDNY 1990) (The docketed entries included, among other things, Salvatore Gravano's judgment of conviction, sentencing memorandum, sentencing minutes, and letters from the U.S. Attorney's Office written on his behalf for leniency).

P.O Box 863 • Long Beach, NY 11561 • (516) 431-1277
www.ganglandnews.com

there really is an extraordinary circumstance or compelling need." And, "where the first amendment provides a right of access, continued sealing of documents may be justified only with specific, on-the record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *In re New York Times Co.,* 828 F2d at 114 (2d Cir. 1987).

Since the letter submitted by the Government is a judicial record, it is "subject to a First Amendment right of access," and the court must determine "by 'specific, on the-record-findings [whether] higher values necessitate a narrowly tailored sealing." *United States v. Erie Cty.,* 763 F.3d 235, 243 (2d Cir. 2014) (quoting *Lugosch v. Pyramid Co.,* 435 F.3d 110, 126 (2d Cir. 2006)). In addition, since the common law presumption of access may also attach to this letter, the court must "determine the weight of the presumption and measure it against competing considerations." *Id.* at 241; *see also United States v. Amodeo,* 71 F.3d 1044, 1048-1053 (2d Cir. 1995).

The potential countervailing "higher values" and "competing interests" in this case have been vaguely identified as the privacy interests of third parties that are not the defendants in this action. The third parties are FBI agents and an informant that were involved in the case's investigation and the activities of such persons directly relate to the pending prosecution. These officials carried out their executive duties [whether in good or bad faith] with the objective of bringing forth the judicial proceedings now before the court, and as a result, their actions concern the integrity of current judicial proceedings that the public has a right to access.

At best, the privacy interest of government actors is minimal since they are responsible for the lapses at issue, and are also the party responsible for conducting the internal investigation at issue. Therefore, such individuals (the Government) cannot contest the reliability of the information it has independently brought forward for the court's review, nor can it claim--as a party to this action-- that it does not have a fair opportunity for the subjects to respond to the accusations contained in its own filing.

In any event, the government cannot seek to seal information solely to shield the public from knowing embarrassing and potentially devastating information related to third parties [government officials] involved in the investigation of its own case. In this regard, "'[m]ere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.'" *United States v. Martorna* 2013 U.S. Dist. LEXIS 182959, 2014 WL 164181, at *5 (quoting *Siedle v. Putnam Invs., Inc.,* 147 F.3d 7, 10 (1st Cir. 1998)). With respect to public officials in particular, "[p]rivacy interests should be trumped when evoked to

protect public officials from criticism." *United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) (citing *Garrison v. State of Louisiana*, 379 U.S. 64, 73 n.9, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964) ("Even the law of privacy . . . recognizes severe limitations where public figures or newsworthy facts are concerned.")).

Finally, the privacy interests of FBI agents and their activities with criminal informants can never truly outweigh the public's right of access given that disclosure of such information inherently furthers "the need for the public monitoring of federal courts." *Lugosch*, 435 F.3d at 123; see also *United States v. Silver*, No. 15-CR-93 (VEC), 2016 U.S. Dist. LEXIS 51057, at *21-22 (S.D.N.Y. Feb. 23, 2016 ("The privacy interest of the Defendant—a public official convicted of participating in criminal schemes that were cut from the same corrupt cloth as the evidence discussed in the Motion in Limine—does not, in this case, trump the public's right of access.").

And as the court is well aware, "the power to close a courtroom during the course of a criminal prosecution and/or to seal the records . . . is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons." *United States v. Cojab*, 996 F.2d 1404, 1405 (2d Cir. 1993).

Precluding the public from reviewing information that has been submitted by the government in relation to it own officials not only deprives the public from knowing all information material to the performance of the judicial function and related to the substantive rights of criminal defendants as a whole, but also deprives the specific 46 defendants in this case their fundamental right to have their case (and all on-the-record facts relevant to such matters) be held in a public forum. Accordingly, the right to access, either in part or in full,[4] the Government's letter and all documents related thereto is virtually absolute.

As the late U.S. Supreme Court Judge Louis Brandeis succinctly stated in a 1913 *Harper's Weekly* article: "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."

---

[4] In any case in which sealing of a judicial document is appropriate, the Second Circuit has further directed that the court must determine whether redaction is "a viable remedy," or whether the document presents "an all or nothing matter." *Amodeo*, 71 F.3d at 1053 (2d Cir. 1995); see also *IDT Corp. v. eBay*, 709 F.3d 1220, 1224 (8th Cir. 2013).


# Gang Land News
### Real Stuff about Organized Crime

capeci@ganglandnews.com
Jerry Capeci

For all the above reasons, as well as any others the court may deem relevant and appropriate, I respectfully request that the government's letter and all documents related thereto be made available to the public without further ado.

I thank the court for its time and consideration in this matter.

Sincerely,

Jerry Capeci

cc: AUSAs Amanda Kramer, Abigail Kurland, Jessica Lonergan, Jonathan Rebold, Lauren Abinati

# Evidence bungle may aid mob bigs

By KAJA WHITEHOUSE

They could soon be breaking out the Chianti on Arthur Avenue.

A group of reputed mobsters may be spared a trip up the river because the criminal case against them has run into big trouble — thanks to some bungling by the feds, The Post has learned.

Reputed Genovese capo Pasquale "Patsy" Parrello — who owns the Bronx sauce joint Pasquale's Rigoletto Ristorante on Arthur Avenue — and alleged Philly mob boss Joseph "Skinny Joey" Merlino are among 46 Mafiosi now hoping their racketeering charges may be dropped.

The group, which includes members of four of the five major Mafia crime families, was rounded up in a massive bust in August.

But federal prosecutors last week alerted their defense lawyers that two FBI agents and a supervising agent in the case are being probed internally about their interactions with a key witness, sources told The Post.

The government is investigating a failure by the agents to archive debriefings with John Rubio, a Genovese associate who wore a wire against his cronies, according to a sealed letter to Manhattan federal court.

Prosecutors also warned that the government may have failed to preserve certain communications with Rubio, raising questions about whether evidence collected by the government witness was suppressed, according to people with knowledge of the letter.

Agents may have also leaked confidential case information to Gangland News, a well-read blog about organized crime, one source said.

The FBI declined to comment, as did the Manhattan US Attorney's office.

Word of potential holes in the case — which alleges arson, assault, extortion and a litany of other offenses — had defendants plotting how to get the charges dropped, sources said.

"The problem is, if they cheated a little bit, they cheated a lot," one source said.

Another source said the letter comes amid concerns by the defense that wiretaps are missing.

The government's case hinges heavily on wiretaps produced by Rubio, who worked for both Parrello and Merlino, according to the feds.

Rubio initially worked for Parrello and then went to work for Merlino after Parrello gave the government stoolie permission to work for the accused boss of the Philadelphia Mafia, the feds said at the time of the arrests.

Evidence collected by Rubio contributed to allegations that Parrello ordered his men to beat a panhandler who was bothering female customers of Rigoletto, according to the feds.

Rubio collected evidence also showing Parrello allegedly ordered his men to "threaten and intimidate" a guy who ran an illegal gambling establishment on Saw Mill River Road in Yonkers, the feds have said.

On one occasion, Parrello allegedly told his men to get a guy named Buddy to choke the victim.

"I want Buddy to choke him, choke him, actually choke the motherf--ker … and tell him, 'Listen to me … next time I'm not gonna stop choking … I'm gonna kill you,'" he said, according to the feds.